# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY and METROPOLITAN INSURANCE AND ANNUITY COMPANY,<br><br>          Plaintiffs,<br><br>    v.<br><br>BANK ONE, N.A., BANC ONE CAPITAL MARKETS, INC., CREDIT SUISSE FIRST BOSTON LLC, J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, JPMORGAN PARTNERS, LLC, THE BEACON GROUP, LLC, THE BEACON GROUP III-FOCUS VALUE FUND, L.P., THOMAS G. MENDELL, ERIC R. WILKINSON, HAROLD W. POTE, and LANCE K. POULSEN,<br><br>          Defendants. | No.:  2:03-cv-01882 (SDW)(MCA)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>RETURN DATE: June 4, 2012<br><br>*(Electronically Filed Document)* |

## MEMORANDUM OF LAW
## OF CREDIT SUISSE SECURITIES (USA) LLC IN SUPPORT OF
## ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

BINGHAM McCUTCHEN LLP
Jeffrey Q. Smith (*pro hac vice*)
Steven G. Brody (*pro hac vice*)
Susan F. DiCicco (*pro hac vice*)
399 Park Avenue
New York, New York 10022
Tel:  (212) 705-7000

SILLS CUMMIS & GROSS P.C.
Mark E. Duckstein
The Legal Center
One Riverfront Plaza
Newark, New Jersey  07102
Tel:  (973) 643-7000

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ………………………………………………………........... 1

BACKGROUND........................................................................................................................... 3

   I.   THE PARTIES AND THE FRAUD BY NCFE ........................................................... 3

   II.  THE PROCEEDINGS ................................................................................................. 4

ARGUMENT ............................................................................................................................... 6

   I.   TRANSFER OF THIS ACTION TO THE SDNY IS REQUIRED UNDER
      SECTION 1404(a) ................................................................................................... 6

         A.     Venue Is Proper in the SDNY .................................................................. 7

         B.     The SDNY Is the More Convenient Forum for This Action.................... 7

               1.     The Private Interest Factors Weigh in Favor of Transfer to
                      the SDNY.................................................................................... 8

               2.     The Public Interest Factors Weigh in Favor of Transfer to
                      the SDNY.................................................................................. 12

CONCLUSION ......................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**FEDERAL CASES**

Altamont Pharmacy, Inc. v. Abbott Labs.,
  No. 94 C 6282, 2002 WL 69495 (N.D. Ill. Jan. 18, 2002) .................................................... 6

Am. Tel. & Tel. v. MCI Commc'ns Corp.,
  736 F. Supp. 1294 (D.N.J. 1990).......................................................................................... 9

Cadapult Graphic Sys. v. Tektronix, Inc.,
  98 F. Supp. 2d 560 (D.N.J. 2000).......................................................................................... 13

Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.,
  No. 07-273, 2007 WL 4365328 (D.N.J. Dec. 11, 2007)..........................................11, 12, 15

Elite Sports Enters., Inc. v. Lococo,
  No. 07-4947, 2008 WL 4192045 (D.N.J. Sept. 5, 2008).................................................... 8

ESP Shibuya Enters., Inc. v. Fortune Fashion Indus.,
  No. 08-3992, 2009 WL 1392594 (D.N.J. May 15, 2009).................................................... 13

ExpressJet Airlines v. RBC Capital Markets Corp.,
  No. H-09-992, 2009 WL 2244468 (S.D. Tex. July 27, 2009) ............................................ 14

HAB Carriers, Inc. v. Arrow Truck Sales, Inc.,
  No. 07-4390, 2009 WL 2589108 (D.N.J. Aug. 21, 2009) .................................................. 13

Howard Johnson Int'l, Inc. v. Miss. Hospitality Servs.,
  No. 10-0486, 2011 WL 832323 (D.N.J. Feb. 28, 2011) ...................................................... 7

In re Atherogenics Sec. Litig.,
  No. 05 Civ. 00061, 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006)........................................ 16

In re Enron Corp. Secs., Derivative & "ERISA" Litig.,
  Nos. H-04-0324, H-03-3393, H-05-3031, 2007 WL 4365756 (S.D. Tex. Dec. 10, 2007) .... 14

In re Nat'l Century Fin. Enters., Inc. Invest. Litig.,
  541 F. Supp. 2d 986 (S.D. Ohio 2007) .............................................................................. 11

Job Haines Home for the Aged v. Young,
  936 F. Supp. 223 (D.N.J. 1996)............................................................................................ 7

Jumara v. State Farm Ins. Co.,
  55 F.3d 873 (3d Cir. 1995).........................................................................................7, 8, 12

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Kenwin Shops, Inc. v. Bank of La.,
   No. 97 Civ 907, 1999 WL 294800 (S.D.N.Y. May 11, 1999) ................................................. 7

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,
   523 U.S. 26 (1998) ...................................................................................................... 6

Maximum Human Performance, Inc. v. Dymatize Enters., Inc.,
   No. 09-235, 2009 WL 2778104 (D.N.J. Aug. 27, 2009) ................................................. 11, 12

Ortiz v. Standard & Poor's,
   No. 09-cv-5757, 2010 WL 4687879 (D.N.J. Nov. 10, 2010) .............................................. 11

Peikin v. Kimmel & Silverman, P.C.,
   56 F. Supp. 2d 654 (D.N.J. 2008) ..................................................................................... 11

Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.,
   No. 10-6457, 2011 WL 3329087 (D.N.J. Aug. 2, 2011) ................................................. 7, 8, 9

Rappoport v. Spielberg,
   16 F. Supp. 2d 481 (D.N.J. 1998) .............................................................................. 11, 14, 15

Shah v. Pan Am. World Servs., Inc.,
   148 F.3d 84 (2d Cir. 1998) ............................................................................................... 6

Sias v. Law Offices of Andreu, Palma, & Andreu, PL,
   No. 10-3773, 2011 WL 345928 (D.N.J. Feb. 2, 2011) ......................................................... 8

Telcordia Techs., Inc. v. Tellabs, Inc.,
   No. 09-2089, 2009 WL 5064787 (D.N.J. Dec. 16, 2009) .................................................... 13

Tuoni v. Elec. Evid. Discovery, Inc.,
   No. 10-2235, 2010 WL 5441656 (D.N.J. Dec. 23, 2010) ................................................ 14, 15

Unicredito Italiano v. JP Morgan Chase Bank,
   No. 02-104 GMS, 2002 WL 1378226 (D. Del. June 26, 2002) ....................................... 14, 15

Van Dusen v. Barrack,
   376 U.S. 612 (1964) ...................................................................................................... 6

Williams v. City of New York,
   No. 03 Civ. 5342, 2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ........................................... 2

Wilson v. CSX Transp., Inc.,
   No. 1:94-CV-119-RLV, 2003 WL 22341288 (N.D. Ga. Aug. 6, 2003) ................................. 6

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Yang v. Odom,
    409 F. Supp. 2d 599 (D.N.J. 2006)..................................................................passim

**FEDERAL STATUTES**

15 U.S.C. § 78aa.......................................................................................................... 7

28 U.S.C. § 1391(b)..................................................................................................... 7

28 U.S.C. § 1404(a)...............................................................................................passim

28 U.S.C. § 1407.......................................................................................................... 2

**FEDERAL RULES**

Fed. R. Civ. P. 42 ........................................................................................................ 2

**OTHER AUTHORITIES**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2382 (2008)......... 2

Credit Suisse Securities (USA) LLC ("Credit Suisse"), formerly known as Credit Suisse First Boston, LLC, respectfully submits this memorandum of law pursuant to 28 U.S.C. § 1404(a) in support of its motion to transfer this action to the United States District Court for the Southern District of New York ("SDNY").

## PRELIMINARY STATEMENT

The question on this motion is whether the trial of this case should be held in New Jersey, which has limited contacts with the underlying events and witnesses, or in New York, a State that a federal district judge (presiding over multidistrict proceedings in which this case was included) has already determined "has the greatest interest in regulating the securities transactions that occurred here between two of its own companies." The answer is that this case should be transferred to the SDNY.

This case, brought by MetLife, is one of several substantially similar actions (the "Actions") filed against Credit Suisse, all of which arise from the fraud committed by National Century Financial Enterprises, Inc. ("NCFE").[1] The Actions were filed in various jurisdictions by noteholders who had purchased asset-backed securities (the "NPF Notes") issued by two

---

[1] The Actions are:  (i) City of Chandler v. Bank One, N.A., C.A. No. 2:03-1220 (PHX) (D. Ariz.); (ii) State of Ariz. v. Credit Suisse First Boston Corp., C.A. No. 2:03-1618 (PHX) (D. Ariz.); (iii) Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp., C.A. No. 2:03-2084 (PHX) (D. Ariz.); (iv) Lloyds TSB Bank plc v. Bank One, N.A., C.A. No. 2:03-2784 (D.N.J.) ("Lloyds Action"); and (v) Metro. Life Ins. Co. v. Bank One, N.A., C.A. No. 2:03-1882 (D.N.J.) ("MetLife Action").  The plaintiff in the Lloyds Action is referred to as "Lloyds."  Plaintiffs in the MetLife action are Metropolitan Life Insurance Company ("MLIC") and Metropolitan Insurance and Annuity Company ("MIAC") (collectively referred to as "MetLife").  The Lloyds Action and MetLife Action are collectively referred to as the "New Jersey Actions."  A related action, NYC Employee's Ret. Sys. v. Bank One, N.A., No. 1:03-cv-09973 (S.D.N.Y.) ("NYCERS"), was previously settled and dismissed.  See Order Approving Joint Stipulation and Dismissal with Prejudice of Claims of New York Funds against Credit Suisse, In re Nat'l Century Fin. Enters., Inc., Fin. Inv. Litig., No. 2:03-01565 ("NCFE") (S.D. Ohio June 29, 2009) [D.E. 1635].

NCFE subsidiaries, NPF VI, Inc. ("NPF VI") or NPF XII, Inc. ("NPF XII").  Two cases were filed in this District, three in the District of Arizona, and one in the SDNY (which has since settled).

Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred the Actions to the Southern District of Ohio before District Judge Graham for pretrial proceedings, because the Actions involve common questions of fact and coordination would "serve the convenience of the parties and witnesses and promote just and efficient conduct of the litigation."  During the MDL and related bankruptcy proceedings, more than 23 million pages of documents were produced and 224 depositions were taken.  At the conclusion of pretrial proceedings, the MDL Panel remanded the five Actions back to their originating districts.  Credit Suisse is now seeking to transfer all the Actions to the SDNY for a consolidated trial pursuant to 28 U.S.C. § 1404(a).[2]

Transfer of the Actions makes overwhelming sense because of the efficiencies of a single trial.  These are complicated cases that will require a lengthy trial.  Multiple lengthy trials would waste the resources of the courts, the parties and trial witnesses.  Transfer is particularly urgent due to the significant risk of irreconcilable evidentiary rulings, jury charges and verdicts.  The only question is which court should preside over the single trial.  Here, that court plainly is the SDNY and the MetLife Action should be transferred there.[3]

---

[2] Fed. R. Civ. P. 42(a) does not permit a party to consolidate actions pending in different jurisdictions and thus the actions must first be transferred to a single district pursuant to section 1404(a).  9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2382 (2008); see also Williams v. City of New York, No. 03 Civ. 5342, 2006 WL 399456, at *1 n.1 (S.D.N.Y. Feb. 21, 2006).

[3] The Lloyds Action, currently pending in this District, also should be transferred to the SDNY because (in addition to other reasons) an applicable forum selection clause designates New York as the forum for any related dispute brought by Lloyds.  Credit Suisse is contemporaneously

(Footnote Continued on Next Page.)

Transfer to the SDNY is required under section 1404(a) because, besides being a proper venue, that district would be a more convenient forum for the litigation than would be the District of New Jersey.  As specifically found by Judge Graham in determining that New York law governs MetLife's claims, this Action is properly viewed "as an alleged fraud between a New York seller and New York buyer (who happened to negotiate through its agents in New Jersey)."  Opinion and Order on Credit Suisse's Motion for Summary Judgment in the Noteholder Actions ("SJO") at 17, NCFE (March 2, 2012) [D.E. 1846].  Moreover, Judge Graham ruled, "at the end of the day these were securities transactions between two New York businesses" and "New York has the greatest interest in regulating the securities transactions that occurred here between two of its own companies."  Id.

MetLife cannot possibly prevail under a section 1404(a) analysis.  Credit Suisse's motion to transfer this case to the SDNY should be granted for the reasons set forth below.

## BACKGROUND

### I.     THE PARTIES AND THE FRAUD BY NCFE

NCFE was a privately-held specialty finance company located in Dublin, Ohio.  Founded in 1991, NCFE provided financing to healthcare providers by purchasing their accounts receivable.  To generate funds to purchase the receivables, NCFE created wholly-owned, bankruptcy remote, special purpose entities that issued NPF Notes secured by the receivables. SJO at 3; see also Memorandum of Law of Credit Suisse Securities (USA) LLC and Credit Suisse AG, New York Branch in Support of Their Consolidated Motion for Summary Judgment

---

(Footnote Continued from Previous Page.)

filing a motion to transfer the Lloyds Action.

in the Noteholder Actions ("SJ") at 11, NCFE (Feb. 20, 2009) [D.E. 1520].  From 1991 through May 2002, the NCFE programs issued nearly $4 billion in NPF Notes.  SJ at 11.

Credit Suisse was a placement agent that sold NPF Notes to various investors, including MetLife.  SJO at 5-6.  Credit Suisse was also an investor in the NPF Notes.  Id. at 43-44.  Its principal place of business is in New York.

Plaintiffs MLIC and MIAC are New York and Delaware corporations, respectively, each with its principal place of business in New York.  Id. at 16.

The fraud at NCFE involved advancing money to healthcare providers, without actually receiving eligible healthcare receivables in return.  Those practices caused investors in NCFE, including MetLife and Credit Suisse, to experience losses.  When the fraud was discovered, NCFE essentially had transferred the investors' money to healthcare providers in exchange for "i.o.u.'s" that were worth far less than NCFE had represented due to the lack of sufficient collateral.  As of the date of NCFE's bankruptcy filing, Credit Suisse and its affiliates had lost more than $250 million of its own money due to the fraud at NCFE.  SJO at 43-44.

## II.   THE PROCEEDINGS

Plaintiffs in the various Actions filed their lawsuits in 2003 against Credit Suisse and numerous other institutional defendants (all of whom have since settled the claims against them).  Plaintiffs in the Actions assert – based largely upon the same evidence – that Credit Suisse knew or should have known about the fraud at NCFE.  Because of the overlapping issues in the Actions, the MDL Panel transferred them to the Southern District of Ohio for pretrial proceedings in 2003.[4]

---

[4] Various documents that are part of the MDL proceeding are cited herein.  Those documents are not included with this motion because they are contained in the remanded record.  If the Court

(Footnote Continued on Next Page.)

On August 12, 2003 – before the Actions were transferred to the MDL court – plaintiffs MetLife and Lloyds moved to consolidate the New Jersey Actions for purposes of "discovery and other pretrial proceedings."  Notices of Motion to Consolidate Cases for Discovery Purposes, Lloyds TSB Bank plc v. Bank One, N.A., C.A. No. 2:03-2784 (D.N.J. Aug. 12, 2003) [D.E. 39]; Metro. Life Ins. Co. v. Bank One, N.A., C.A. No. 2:03-1882 (D.N.J. Aug. 12, 2003) [D.E. 21].  The Court concluded that pre-trial consolidation was appropriate, holding "[t]he actions appear to share common issues of law and fact; they appear to arise out of the same operative facts, and include the same allegations of wrongdoing against many of the same defendants."  Transcript of Motions to Stay/Consolidate Before the Hon. Patty Shwartz, U.S.M.J. ("Consol. Tr.") at 60, Lloyds TSB Bank plc v. Bank One, N.A., C.A. No. 2:03-2784 (D.N.J Sept. 9, 2003) [D.E. 87].  The Court further stated that "consolidation for trial will be visited at a later date."  Consol. Tr. at 79.

On March 2, 2012, Judge Graham granted in part and denied in part Credit Suisse's summary judgment motion.  The triable issues of material fact identified by Judge Graham are common to all five Actions, and include:  (1) whether actionable misrepresentations were made by Credit Suisse; (2) whether Credit Suisse acted with scienter; and (3) whether plaintiffs could have reasonably relied on Credit Suisse in light of statements made in the NPF private placement memoranda.  SJO at 33, 42, 57.

Critically, Judge Graham noted that, despite MetLife's alleged connections to New Jersey, "at the end of the day these were securities transactions between two New York

_____

(Footnote Continued from Previous Page.)

would like to receive courtesy copies of any such documents, Credit Suisse will provide them.

businesses" and "New York has the greatest interest in regulating the securities transactions that occurred here between two of its own companies." Id. at 17.

## ARGUMENT

I.   **TRANSFER OF THIS ACTION TO THE SDNY IS REQUIRED UNDER § 1404(a)**

Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id.  The purpose of transfer is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation omitted).

Numerous decisions hold that transfer pursuant to section 1404(a) is appropriate following remand from an MDL court. See Shah v. Pan Am. World Servs., Inc., 148 F.3d 84, 91 (2d Cir. 1998) ("'[O]n any view of § 1407(a), if an order may be made under § 1404(a), it may be made after remand of the case to the originating district court.'") (quoting Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 39 (1998)).  Courts routinely grant motions to transfer to a single district for trial that are filed after remand from an MDL court. See, e.g., Altamont Pharmacy, Inc. v. Abbott Labs., No. 94 C 6282, 2002 WL 69495, at *3-5 (N.D. Ill. Jan. 18, 2002) (granting motion to transfer to Eastern District of New York following completion of consolidated MDL pretrial proceedings and remand; finding district was most convenient forum for parties and witnesses as plaintiffs' locations were scattered throughout country, and thus not relevant to analysis, while defendants' corporate headquarters or principal places of business were all in New York area); Wilson v. CSX Transp., Inc., No. 1:94-CV-119-RLV, 2003 WL 22341288 (N.D. Ga. Aug. 6, 2003) (granting defendant's transfer motion back to transferee district where alleged wrongdoing occurred; noting transferor district was neither the

residence of any plaintiff, nor site of alleged wrongdoing, nor location of unique records or documents); Kenwin Shops, Inc. v. Bank of La., No. 97 Civ 907, 1999 WL 294800 (S.D.N.Y. May 11, 1999) (transferring cases to single district after remand by the MDL Panel).

Under section 1404(a), a court is required to balance several private and public factors to determine if transfer is proper.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-880 (3d Cir. 1995).  Consideration of those factors here plainly weighs in favor of transfer to the SDNY.

A.      **Venue Is Proper in the SDNY**

Under section 1404(a), transfer may only be made to a district where the action "might have been brought." Howard Johnson Int'l, Inc., LLC v. Miss. Hospitality Servs., No. 10-0486, 2011 WL 832323, at *2 (D.N.J. Feb. 28, 2011).  A district qualifies as one in which an action "might have been brought" if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue.  Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).

Like this Court, the SDNY would have original subject matter jurisdiction over this action as a matter alleging violations of Title 15. See 15 U.S.C. § 78aa.  There is no dispute that the SDNY would also have personal jurisdiction since both parties reside in New York and, indeed, Credit Suisse is headquartered there. See Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996).  Moreover, as discussed infra, venue is proper in the SDNY because nearly all the relevant events occurred in New York. See 28 U.S.C. § 1391(b).

B.      **The SDNY Is the More Convenient Forum for This Action**

The Third Circuit has articulated certain "private" and "public" factors to consider when deciding a motion to transfer.  See Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A., No. 10-6457, 2011 WL 3329087, at *2 (D.N.J. Aug. 2, 2011) (citing Jumara, 55 F.3d at 879).  The private interests include:  (1) plaintiff's forum preference; (2) defendant's forum

preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that files could not be produced in the alternative forum.  Jumara, 55 F.3d at 879.  The public interests include:  (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the governing law.  Id.

As demonstrated below, a balancing of the Third Circuit's factors here weighs decisively in favor of transfer of this Action to the SDNY.

### 1.   The Private Interest Factors Weigh in Favor of Transfer to the SDNY

First, "although [MetLife's] forum preference in this matter is the District of New Jersey, the Court affords less deference to Plaintiff's choice of forum in this district because:  (1) the operative facts of this lawsuit, namely, the alleged dissemination of materially misleading information, did not occur in New Jersey."  Yang, 409 F. Supp. 2d at 606.  Indeed, the significance of a plaintiff's choice of forum "diminishes where the plaintiff chooses a foreign forum rather than his or her own forum and decreases even further where the central facts of a lawsuit occur outside the chosen forum."  Platinum Partners, 2011 WL 3329087, at *3 (emphases in original; internal quotation omitted); see also Sias v. Law Offices of Andreu, Palma, & Andreu, PL, No. 10-3773, 2011 WL 345928, at *3 (D.N.J. Feb. 2, 2011) ("Although a plaintiff's choice of forum generally carries significant weight, it warrants less deference here, where the case has little connection to the chosen forum."); Elite Sports Enters., Inc. v. Lococo, No. 07-4947, 2008 WL 4192045, at *4 (D.N.J. Sept. 5, 2008) (holding, even though plaintiff was

a New Jersey corporation, "choice of forum by a plaintiff is simply a preference; it is not a right," noting factor is entitled to less deference where a substantial part of the events and operative facts did not occur in New Jersey); Am. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.").

Here, MLIC is a New York corporation with its principal place of business in New York. SJO at 16.  MIAC is a Delaware corporation, which also has its principal place of business in New York.  Id.  Credit Suisse itself is headquartered in New York.  Id. at 5.  Moreover, most of the operative events alleged in the complaint occurred in New York, and the action has limited connection to New Jersey.  Accordingly, MetLife's decision to file this case in the District of New Jersey should be afforded little or no weight in the transfer analysis.  See, e.g., Platinum Partners, 2011 WL 3329087, at *3.

Second, the defendants' forum preference "obviously weighs in favor of litigating this matter in [the SDNY]."  Yang, 409 F. Supp. 2d at 607.  This is particularly true in light of the many party and non-party witnesses located in New York, as discussed infra.

Third, MetLife's claims irrefutably arose in New York.  "To determine where a claim 'arose,' it is necessary to look to the district in which 'the contacts weigh most heavily.'" Platinum Partners, 2011 WL 3329087, at *3 (citation omitted).  As found by Judge Graham, New York "is also where Credit Suisse and MetLife have their principal place of business."  SJO at 16-17.  He further found that "Credit Suisse made the representations from New York."  Id. at 16.  Accordingly, Judge Graham held that "New York has the greatest interest in regulating the securities transactions that occurred here between two of its own companies."  Id. at 17.  Indeed, although certain of MetLife's New Jersey employees were involved in the underlying events,

Judge Graham explicitly concluded that "at the end of the day these were securities transactions between two New York businesses."  Id.

Moreover, notwithstanding MetLife's allegation that it made investment decisions and received the NPF Notes in New Jersey (MetLife Fourth Amended Complaint at ¶¶ 40-41, NCFE (Jan. 17, 2006) [D.E. 690]) Judge Graham found that this matter is properly viewed "as an alleged fraud between a New York seller and New York buyer (who happened to negotiate through its agents in New Jersey)."  SJO at 17.  MetLife admits that Credit Suisse acted "primarily out of its New York office."  Consolidated Memorandum of MetLife and Lloyds in Opposition to Credit Suisse's Consolidated Motion for Summary Judgment in the Noteholder Actions ("NJ Opp. Br.") at 206, NCFE (May 5, 2009) [D.E. 1565]; see also SJ at 57.  As also found by Judge Graham, Credit Suisse's New York Asset Finance Group regularly reviewed written materials upon which plaintiffs claim to have relied, e.g., private placement memoranda, "Sales Points" brochures, and term sheets.  SJO at 14 ("Credit Suisse's input on the [offering] materials originated from its Asset Finance Group in New York.").  Following that review, Credit Suisse distributed the materials to MetLife from New York.  SJ at 16.

Further, the New York Asset Finance Group was also the source of multiple other communications (e.g., telephone calls, email, faxes) purportedly relied upon by MetLife.  NJ Opp. Brief at 53-55, 57, 65, 67, 69-70, 72-80, 114, 117-19, 121, 170-73, 190; see also SJ at 34, 69, 90, 96, 98, 109; SJO at 26, 78, 83-84.  In addition, Credit Suisse's sales of NPF Notes in the secondary market all took place through its secondary trading desk in New York, which only occurred after NPF VI and NPF XII chose New York for the closings and deliveries of their initial NPF Note issuances to Credit Suisse.  SJ at 131, 134.

Thus, MetLife's claims clearly arose in New York, not New Jersey, and this factor

weighs conclusively in favor of transfer to the SDNY.  See Maximum Human Performance, Inc. v. Dymaitze Enters., Inc., No. 09-235, 2009 WL 2778104, at *7 (D.N.J. Aug. 27, 2009) (transferring action to district where allegedly wrongful conduct occurred at defendant's headquarters); Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, (D.N.J. 2008) (transferring action from District of New Jersey to Eastern District of Pennsylvania, where, inter alia, action centered around discriminatory conduct in Pennsylvania); see also In re Nat'l Century Fin. Enters., Inc. Invest. Litig., 541 F. Supp. 2d 986, 1007 (S.D. Ohio 2007) (dismissing claim under New Jersey blue sky law where Lloyds failed "to allege any connection between New Jersey and Credit Suisse's actionable conduct").[5]

Fourth, the SDNY is plainly the most convenient district for all of the parties in this matter.  Both Credit Suisse and MetLife reside in New York.  See Yang, 409 F. Supp. 2d at 607 (finding convenience of parties favored transfer where majority of parties resided).   Many witnesses are located in New York and counsel for both parties are likewise based in New York. See Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., No. 07-273, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007) (finding persuasive the predominance of plaintiff's counsel in proposed transferee forum).

---

[5] The fact that MetLife kept an office in New Jersey does not alter the conclusion under this significant factor.  See Ortiz v. Standard & Poor's, No. 09-cv-5757, 2010 WL 4687879, at *2-3 (D.N.J. Nov. 10, 2010) (transferring matter to SDNY despite fact that New Jersey was plaintiff's residence, holding "[m]ore than any of the [other] private factors, though, the fact that the underlying events that gave rise to this cause of action took place in New York overwhelmingly favors the Southern District of New York as the appropriate venue for the fair and complete adjudication of this matter"); Rappoport v. Spielberg, 16 F. Supp. 2d 481, 500-504 (D.N.J. 1998) (finding, despite "the fact that [plaintiff] and at least one defendant (Nabisco) are residents of New Jersey and certain defendants do business within [New Jersey]" that "[t]his minimal asserted connection with New Jersey does not impact the transfer analysis" where "a substantial portion of the alleged events giving rise to the claims by [plaintiff] occurred in New York").

Fifth, to the extent that they are relevant here, the convenience of the witnesses and the location of the documents factors favor transfer as well.  Most of the relevant personnel of Credit Suisse are located in New York as are many non-party witnesses, such as representatives of rating agencies and other banks that served as trustees under the indentures for the NPF Notes.  See Declaration of Stephen Scotch-Marmo ("Scotch-Marmo Decl."), Ex. A (Witness Chart).  A few witnesses for MetLife are located in New Jersey, but they are well within the 100-mile subpoena power radius of the SDNY and would not be appreciably affected by transfer to the SDNY.  See Cancer Genetics, 2007 WL 4365328, at *6 (finding convenience of witnesses and the access of proof would not be significantly affected by transferring action from New Jersey to New York).

Generally, in this Circuit, the convenience of witnesses and location of documents are only considered on a motion to transfer venue when "the witnesses may actually be unavailable for trial in one of the fora" or where the documents "could not be produced in the alternative forum."  Jumara, 55 F.3d at 879.  Thus, insofar as these factors are even a consideration, the SDNY is a far more convenient forum for the witnesses and documents here.  See, e.g., Yang, 409 F. Supp. 2d at 607 (holding that proposed transferee district was more convenient given majority of potential witnesses' availability in the district); Maximum Human Performance, Inc., 2009 WL 2778104, at *7 (finding that, although location of documents is generally entitled little weight, factor weighed in favor of transfer where all of the books, records and information relating to the action were located in the transferee district).

In sum, the private interest factors indisputably weigh in favor of transfer to the SDNY.

## 2.     The Public Interest Factors Weigh in Favor of Transfer to the SDNY

Similarly, the public factors also weigh in favor of transfer.  First, if enforceability of a

judgment were relevant here, it would weigh in favor of the SDNY because Credit Suisse is located in New York.

Second, the practical considerations factor also weighs in favor of transfer. Numerous party and non-party witnesses are located in New York. In contrast, only a handful of witnesses is located in New Jersey. Thus, a majority of the relevant individuals would incur additional expense and inconvenience if the parties were to litigate this matter in this District.

Third, the relative administrative difficulty factor weighs in favor of the SDNY. Courts in this District look to weighted filings per judgeship in evaluating congestion of a federal district. See, e.g., Telcordia Techs., Inc. v. Tellabs, Inc., No. 09-2089, 2009 WL 5064787, at *3 (D.N.J. Dec. 16, 2009). Statistics on weighted filings compiled by the Federal Judiciary indicate that the SDNY is less burdened than this District.[6]

Fourth, the local interest in deciding controversies at home weighs heavily in favor of transfer to New York because states have an interest in regulating the conduct of their corporations. HAB Carriers, Inc. v. Arrow Truck Sales, Inc., No. 07-4390, 2009 WL 2589108, at *4 (D.N.J. Aug. 21, 2009) ("A state has a compelling interest in regulating its businesses . . . ."); ESP Shibuya Enters., Inc. v. Fortune Fashions Indus., No. 08-3992, 2009 WL 1392594, at *4 (D.N.J. May 15, 2009) (state where defendant maintains its principal place of business has a "compelling interest in regulating the conduct of its businesses" (internal quotation omitted)); Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 568 (D.N.J.

_____

[6] The Federal Judiciary website indicates that weighted filings per judgeship in the SDNY were 493 as compared to 559 in this District. Table X-1A, U.S. District Courts – Weighted and Unweighted Filings per Authorized Judgeship During the 12-Month Period Ending September 30, 2011, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/X1ASep11.pdf (last visited Apr. 24, 2012).

2000) (states have interests in regulating the conduct of their corporations, and in protecting their corporations); <u>Rappoport</u>, 16 F. Supp. 2d at 503 ("New York has a strong interest in the proper application of its laws to persons doing business within its jurisdiction").

Moreover, New York, as the nation's financial capital, has a special interest in bank fraud litigation.   See <u>Unicredito Italiano v. JPMorgan Chase Bank</u>, No. 02-104 GMS, 2002 WL 1378226, at *4 (D. Del. June 26, 2002) (holding that "the primary public interest raised by this case - the ethics of the banking profession - is more appropriately addressed in New York" as "New York City remains the financial center of the United States, if not the world"); <u>see also</u> <u>ExpressJet Airlines v. RBC Capital Markets Corp.</u>, No. H-09-992, 2009 WL 2244468, at *13 (S.D. Tex. July 27, 2009) (holding local interest factor weighed in favor of transfer to the SDNY despite alleged fraud involving Texas-based plaintiff, as "New York City, New York is widely known as the nation's financial capital, if not that of the world" and "New York's interest in regulating these markets predominates because the financial industry is critical to its overall economic health and vitality, as well as that of the nation"); <u>In re Enron Corp. Secs., Derivative & "ERISA" Litig.</u>, Nos. H-04-0324, H-03-3393, H-05-3031, 2007 WL 4365756, at *8 (S.D. Tex. Dec. 10, 2007) (finding, though fraudulent conduct "occurred largely in Houston," that "these actions are disputes among banks and successors-in-interest to certain banks . . . . As the financial capital of the United States, New York has a strong public interest in adjudicating these actions").

Here, Credit Suisse and MLIC are New York corporations, and all of the parties have their principal place of business in New York.   On the other hand, <u>none</u> of the parties are New Jersey corporations and the bulk of the alleged misconduct occurred outside of this state (and, moreover, occurred in the SDNY).   Thus, this factor weighs in favor of transfer.   See <u>Tuoni v.</u>

Elec. Evid. Discovery, Inc., No. 10-2235, 2010 WL 5441656, at *6 (D.N.J. Dec. 23, 2010) ("[B]ecause the alleged wrongful conduct occurred outside of New Jersey, there is no local interest in having the matter decided here. The burden of jury duty should therefore not be imposed on New Jersey jurors."); Rappoport, 16 F. Supp. 2d at 501 ("New Jersey jurors should not be burdened with adjudicating a matter concerning alleged conduct which has virtually no connection with New Jersey.").

Fifth, to the extent that public policy is implicated at all in this analysis, this factor also favors transfer because the Action involves securities transactions that took place in New York between two New York companies. See Tuoni, 2010 WL 5441656, at *6; Unicredito Italiano, 2002 WL 1378226, at *4; SJO at 17.

Sixth, and finally, the familiarity of the trial judge with the governing law of New York weighs in favor of transfer to the SDNY.  Judge Graham explicitly held that "the relevant considerations of the Restatement weigh in favor of applying New York law."  SJO at 17. Further, MetLife's common law tort claims are also governed by New York law (only the state blue sky law claims are not).  Id. at 15-16.  As Judge Graham held, "Credit Suisse and MetLife undoubtedly are accustomed to operating under New York law and under the Martin Act in particular, as both parties engage frequently in securities transactions," and, "[t]hus, there is nothing unfair about holding MetLife's common law claims to the standards of New York, even if those standards are more stringent than those of New Jersey law."  Id.  "Courts recognize the desire to have a case tried before judges familiar with the applicable law."  Cancer Genetics, 2007 WL 4365328, at *6 (internal quotation omitted).  It cannot be disputed that the SDNY is more familiar with New York law than any other district.  See id. (finding New York choice of

law provision weighed in favor of transferring action from New Jersey to New York).  Thus, this factor likewise favors transfer to New York.

Further, transfer is "especially appropriate where, as here, there are previously filed actions in the defendants' home district."  See, e.g., In re Atherogenics Sec. Litig., No. 05 Civ. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006).  Here, the Lloyds Action (currently pending in this District) should be treated as having been filed in the SDNY, due to a forum selection clause which designates venue exclusively in the courts of New York.  See Participation Agreement between Credit Suisse AG, New York Branch, formerly known as Credit Suisse First Boston, New York Branch and Lloyds, dated March 1, 2001 (the "Participation Agreement"), attached as Exhibit B to the Scotch-Marmo Decl.  In addition, a related action against Credit Suisse, which was part of the MDL proceeding and has now been settled, was originally filed in the SDNY.[7]  See NYCERS, supra note 1.

---

[7] Among others, Judge Kaplan of the SDNY, before whom the NYCERS case was pending, would be an appropriate judge to preside over a consolidated trial of the Actions.

## **CONCLUSION**

For the foregoing reasons, Credit Suisse respectfully requests that this Court transfer this Action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

Dated:   Newark, New Jersey
         April 30, 2012

                              Respectfully submitted,


                              SILLS CUMMIS & GROSS P.C.

                              By:   s/ *Mark E. Duckstein*
                                       Mark E. Duckstein
                              The Legal Center
                              One Riverfront Plaza
                              Newark, New Jersey  07102
                              Tel:  (973) 643-7000

                                   -and-

                              BINGHAM McCUTCHEN LLP

                              Jeffrey Q. Smith  (*pro hac vice*)
                              Steven G. Brody  (*pro hac vice*)
                              Susan F. DiCicco  (*pro hac vice*)
                              399 Park Avenue
                              New York, New York  10022
                              Tel:  (212) 705-7000

                              Attorneys for Defendant
                              Credit Suisse Securities (USA) LLC